## IN THE MATTER OF THE WILL OF MATTHEW LONDON LONG.

(Filed 10 July 1962.)

**1. Wills § 3—**

It is not required that witnesses to an attested will should affix their signatures in the presence of each other, but only that they do so in the presence of testator. G.S. 31-3(d).

**2. Wills § 22; Appeal and Error § 42—**

Upon appeal from judgment based upon the negative finding of the jury to the issue of the due execution of the paper writing propounded, an instruction to the effect that the subscribing witnesses must have affixed their signatures in the presence of each other, must be held for prejudicial error notwithstanding that all of the evidence tends to show that the witnesses did sign the instrument in the presence of each other, since the negative answer to the issue may have been influenced by the requirement that the jury believe the evidence in regard to this unnecessary element.

APPEAL by propounder from *Hobgood, J.,* at the September 1961 Civil Term of COLUMBUS.

This action was tried upon the issue of *devisavit vel non* raised by a caveat.

At the age of eighty-two years Matthew London Long died on May 3, 1961 at the home of his niece, Mrs. Daisy Hinojosa, in Fort Bragg, North Carolina. A paper writing bearing the same date was probated in common form on May 5, 1961 as his last will by Mrs. Hinojosa, its sole beneficiary. The caveat was filed by Bertha Long McKeithen on May 15, 1961. She alleged that she was the daughter of Matthew London Long; that the execution of the purported will was obtained by the propounder, Mrs. Hinojosa, through undue influence on Matthew London Long; and that on May 3, 1961 he lacked testamentary capacity.

Upon the trial the four issues usually raised by a caveat were submitted to the jury. *In re Will of Etheridge,* 229 N.C. 280, 49 S.E. 2d 480. The first issue was submitted and answered as follows:

"1. Was the paper writing dated May 3, 1961, and offered for probate as the last will and testament of Matthew London Long, executed according to law?

"ANSWER: No."

The other three issues were not answered.

All the evidence relating to the formal execution of the will tended to establish the following facts:

About 9:30 A. M. on May 3, 1961, Dr. Lewis S. Gaines, pastor of the First Baptist Church in Fayetteville, made a pastoral call on Mr. Long in the home of Mrs. Hinojosa. Mr. Long told the minister that he wanted "to place all his affairs and all of his holdings in the hands of Daisy." He said he had no will and requested the minister to call an attorney. Dr. Gaines called Mr. D. P. Russ, Jr. and told him what Mr. Long had said. Mr. Russ then prepared the paper writing propounded which purported to devise all of Mr. Long's property to Mrs. Hinojosa and to appoint her executrix. About noon Dr. Gaines and Mr. Russ carried the instrument to the Hinojosa home where it was read to Mr. Long and then handed to him for inspection. Mr. Russ "told him that it would be necessary for him to sign the will and to have the witnesses sign it and that it would have to be witnessed at his request." The attorney asked Mr. Long if he wanted him, Dr. Gaines, and Mrs. Alice Leona McLain, the sister of Mrs. Hinojosa, who were in the room, to witness his will. Mr. Long said that he did. He was then propped up on pillows and given a fountain pen, but he was too weak and shaky to sign his name. Russ inquired of Mr. Long if he wanted to make an "X" mark for his signature and let Russ sign his name for him. He said that he did. Russ wrote Mr. Long's name and then steadied his hand while he made his mark. Russ then asked him if that was what he meant for his signature, and Mr. Long said it was. At that time Dr. Gaines, Mr. Russ, and Mrs. McLain were in the room with Mr. Long. The three then signed in his presence and in the presence of each other.

With reference to the first issue the trial judge charged the jury as follows:

"Members of the jury, if you, the jury, are satisfied from the evidence and by its greater weight, that Matthew London Long signed said paper writing offered by the propounder as his last will and testament; or if you find by the greater weight of the evidence that it was signed by D. P. Russ, Jr., at the request of Matthew London Long, and that he made his "X" mark on said signature, acknowledging it as his own signature and at his direction; if you further find from the evidence and by its greater

weight that D. P. Russ, Jr., Lewis S. Gaines and Alice Leona McLain (it is not necessary to have but two of them, under the law, as witnesses, not three) subscribe their names as witnesses to said paper writing and that their signatures were subscribed thereto at the request of Matthew London Long, and in his presence and in the presence of each other, then you will answer Issue #1 which the Court has read to you, 'Was the paper writing dated May 3, 1961, and offered for probate as the last will and testament of Matthew London Long, executed according to law?' — if you find those facts, from the evidence and by its greater weight, then you will answer the first issue YES; if you are not satisfied of said aforementioned facts and by the greater weight of the evidence, then you will answer the first issue NO."

From judgment entered upon the verdict decreeing that the paper writing dated May 3, 1961 and offered for probate was not the last will and testament of Mr. Matthew London Long, the propounder appealed. She assigned as error that portion of the charge quoted above.

*D. F. McGougan, Jr. and Powell, Lee and Lee for propounder appellant.*
*Herring, Walton and Parker for caveator appellee.*

SHARP, J.　The battleground of this case in the trial below was not the first issue; it was the second and third issues. All the evidence tended to show that the paper writing was executed in conformity with the legal requirements for the execution of a valid will. We must assume, therefore, that the jury's negative answer to the first issue indicated either confusion as to the law or disbelief of some of the uncontradicted evidence.

With reference to the signature of Mr. Matthew London Long, one of the alternative hypotheses upon which the jury was instructed to answer the first issue "Yes" was a finding "that Matthew London Long signed the paper writing offered by the propounder as a last will and testament." Since there was no evidence that Mr. Long actually wrote his own name, it is possible that this instruction, without more, confused the jury. Further explanation of the right of a testator to adopt as his own a signature written by another at his request and in his presence, would have been in order.

However, be that as it may, the judge told the jury that if the signatures of the witnesses "were subscribed thereto at the request of Matthew .Long, and in his presence *and in the presence of each other*" (Emphasis added) they would answer the first issue "Yes";

otherwise, "No." This was error. Witnesses are not required to sign in the presence of each other; only in the presence of the testator. G.S. 31-3.3(d).

Upon the authority of *In re Will of Etheridge, supra,* a new trial is required even though all the evidence tended to show that the witnesses did sign in the presence of each other. The *Etheridge* case presented a situation strikingly similar to the instant case. There, as here, all the evidence tended to show the formal execution of the instrument in strict conformity with legal requirements for a valid will. The judge instructed the jury that if they believed the evidence and found the facts to be as all the evidence tended to show that they would answer the first issue "Yes". The jury answered it "No." However, the judge also instructed the jury that the law required the testator to sign the will in the presence of the witnesses. *Justice Seawell,* speaking for the Court said:

> "While the judge directed the jury to answer the issue as to the execution of the will 'yes,' — predicated on their belief of the evidence,—this did not withdraw from the jury the erroneous statement of the legal requirements under G.S. 31-3. And it may have entered into their consideration as the basis of their disbelief. As to this we cannot, of course, say; but the evidence should have been submitted to the jury with an exact statement of the law relating to the subject, particularly since the formal execution of the will was a matter in issue."

The propounder is entitled to a trial *de novo,* and it is so ordered.
New trial.